# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 16-0341** (Kanawha County 15-F-186)

**Leonard Thomas,**
**Defendant Below, Plaintiff**

**FILED**

**September 1, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Leonard Thomas, by counsel Edward L. Bullman, appeals his February 3, 2016, conviction for the offense of murder in the first degree. Respondent State of West Virginia, by counsel David A. Stackpole, filed a response in support of the circuit court's order. Petitioner argues that the State failed to present sufficient evidence to rebut his assertion that he acted in self-defense. Further, petitioner argues that the State failed to proffer evidence of malice and premeditation sufficient to sustain his conviction.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, we find that there is sufficient evidence in the record to sustain petitioner's conviction for murder in the first degree. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21(d) of the Rules of Appellate Procedure.

On November 18, 2014, petitioner was an overnight guest at an apartment in Rand, West Virginia. In addition to petitioner, several others were also staying in the apartment, including Gerald Maxwell. Petitioner contends that some of those staying in the apartment were using illicit drugs; that Mr. Maxwell was selling illicit drugs; and that several females staying in the apartment were trading sex for illicit drugs.

Petitioner does not dispute that on the morning of November 18, 2014, he shot the decedent in the head at close range. However, petitioner's description of the facts surrounding the shooting and the description provided by other witnesses are drastically different. Petitioner contends that on the evening prior to the shooting, he and the decedent argued over whose turn it was to engage in sex with a certain female. Petitioner testified that he and the decedent argued, and when the decedent made a move to pull a gun, such action prompted petitioner to shoot the decedent in self-defense.[1] The State argues that petitioner shot the decedent as he laid, unarmed,

---

[1] Petitioner testified that on the night of the shooting, he engaged in sex acts with a female in the bathroom of the apartment. While petitioner was in the bathroom, the decedent (continued . . .)

1

upon a couch with his eyes closed. An eyewitness to the shooting, a woman sitting on a nearby couch, testified that at the time of the shooting, the decedent was unarmed and laying down with his eyes closed. Aside from petitioner, none of the other trial witnesses recalled the decedent having possession of a firearm at the time of the shooting or the evening prior.

In support of his claims of self-defense, petitioner argued that the decedent constantly belittled him and had previously made threats of physical harm against him.[2] However, the testimony of other trial witnesses describes petitioner as someone eager to commit murder. At trial, a witness present in the apartment testified that petitioner had been agitated the night prior to the shooting and had told her that it did not bother him to take a life. This witness described petitioner as being aggravated and testified that petitioner stated that the decedent was "treating him like he was a punk" and that the decedent was "going to force him to do something he didn't want to do." Similarly, another witness testified that on the morning prior to the shooting, petitioner was sitting at a table in the apartment "popping shells in and out of a gun." When questioned about what he was doing, petitioner responded, "I'm going to kill me a mother f***er this morning."

Another witness testified that in the days leading up to the shooting, petitioner was "acting more withdrawn and more hateful" and was being "snappy." The witness described an incident that occurred the same night of the shooting wherein she had to step in and break up an altercation between petitioner and one of her male friends. Further, the witness testified that on the evening of the shooting, she observed petitioner counting on his fingers. When she asked petitioner what he was doing, petitioner responded, "I need to know how many bullets I need because I'm going to kill every one of you mother f***ers before the night's up."

In May of 2015, petitioner was indicted by the Kanawha County Grand Jury and charged with the decedent's murder. Following a jury trial, petitioner was convicted of the offense of murder in the first degree. Further, the jury found that no mercy in sentencing should be afforded to petitioner. On March 9, 2016, the circuit court entered an order formally sentencing petitioner to life in prison. It is from his February 3, 2016, jury conviction that petitioner now appeals.

On appeal, petitioner alleges three assignments of error. While independently argued, in each of these assignments of error petitioner contends that the State failed to present sufficient

---

interrupted and demanded his turn with the female. Petitioner initially refused the decedent entry to the bathroom but ultimately relented and left the bathroom. Thereafter, petitioner returned to the bathroom and knocked on the door. The decedent told petitioner to leave. Sometime later, the decedent exited the bathroom and petitioner asked the decedent for drugs so that he could again engage in sex acts with the female. The decedent refused. Petitioner contends that after this exchange, the decedent pulled out a gun and aimed it at him. Petitioner alleges that in response he shot the decedent.

[2] Petitioner contends that in the days prior to the shooting, the decedent and his two brothers threatened petitioner. Further, petitioner testified that in the days before the shooting, the decedent forced petitioner to pick up excrement from the yard.

evidence to sustain his conviction. First, petitioner alleges that the State failed to present sufficient evidence to rebut his testimony that he acted in self-defense. Second, petitioner alleges that the State failed to present sufficient evidence of malice and premeditation to sustain his conviction of murder in the first degree. Third, petitioner contends that the State failed to present sufficient evidence to support a charge of murder in the second degree against him.

We have long held that

1. The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

3. A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

Syl. Pts. 1 and 3, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

In addressing claims of self-defense, we have found that "[o]nce there is sufficient evidence to create a reasonable doubt that the killing resulted from the defendant acting in self-defense, the prosecution must prove beyond a reasonable doubt that the defendant did not act in self-defense." Syl., *State v. Clark*, 171 W. Va. 74, 297 S.E.2d 849 (1982). Here, petitioner argues that he presented sufficient evidence that he was acting in self-defense at the time of the shooting. Such evidence included the fact that the decedent had a history of violence; the decedent was substantially bigger in physical size than petitioner; and the decedent consistently disparaged petitioner.

Petitioner discounts the testimony of the witnesses present in the apartment at the time of the shooting and notes that these witnesses were more connected to the decedent than petitioner, who they viewed as an outsider. While none of the witnesses corroborated petitioner's testimony that the decedent was in possession of a firearm at the time of the shooting, he argues that it "strains credibility" to believe that with the drug activity in the apartment that there were no drugs, money, or paraphernalia discovered by the police officers called to the scene. Petitioner speculates that the scene must have been cleared by the witnesses.

Conversely, respondent argues that petitioner's challenge to the sufficiency of the evidence offered against him at trial is simply a request to re-weigh the credibility of witnesses. Respondent contends that even if petitioner's self-serving testimony was sufficient to create reasonable doubt that he acted in self-defense, the State offered sufficient evidence to demonstrate beyond a reasonable doubt that petitioner did not act in self-defense. Based upon our review of the record herein, we agree with respondent.

We have previously held that that "[i]t is peculiarly within the province of the jury to weigh the evidence upon the question of self-defense, and the verdict of a jury adverse to that defense will not be set aside unless it is manifestly against the weight of the evidence." Syl. Pt. 7, *State v. White*, 231 W. Va. 270, 744 S.E.2d 668 (2013) (citations omitted). As the trier of fact, the jury was the "sole judge as to the weight of the evidence and the credibility of the witnesses." Syl. Pt. 8, in part, *id.* (citation omitted). In the instant case, viewing all of the evidence in the light most favorable to the prosecution and crediting all inferences and credibility assessments that the jury might have drawn in favor of the prosecution, we conclude that the State's evidence was sufficient to sustain petitioner's conviction for murder in the first degree.

In his second assignment of error, petitioner contends that the State failed to present sufficient evidence of malice and premeditation to sustain his conviction of murder in the first degree. We have previously held that

[a]lthough premeditation and deliberation are not measured by any particular period of time, there must be some period between the formation of the intent to kill and the actual killing, which indicates the killing, is by prior calculation and design. This means there must be an opportunity for some reflection on the intention to kill after it is formed.

Syl. Pt. 5, *Guthrie*.

In *State v. Hatfield*, 169 W. Va. 191, 198, 286 S.E.2d 402, 407 (1982), we noted that in regard to first degree murder, the term "malice" is often used as a substitute for "specific intent to kill" or "an intentional killing." We have further noted that a defendant "faces an 'uphill climb' when he challenges the sufficiency of the evidence and that we will reverse 'only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Scott*, 206 W. Va. 158, 167, 522 S.E.2d 626, 635 (1999) (citing *State v. LaRock*, 196 W.Va. 294, 303, 470 S.E.2d 613, 622 (1996)).

Here, petitioner contends that the shooting took place following an evening of drug use and during the heat of an argument in which the decedent disparaged petitioner. Petitioner asserts these actions caused him to react "suddenly and without premeditation." Petitioner argues that had the shooting been premeditated he would not have shot the decedent face-to-face in front of an eyewitness. Petitioner contends that, at most, the evidence on the record establishes that his decision to shoot the decedent was formed in the heat of an argument over sex and money.

Based on our review of the record before us, we disagree. The record is replete with testimony regarding the petitioner's actions and attitude at the time of and shortly before to the

4

shooting to sustain the jury's determination that he acted in a premeditated and deliberate way when shooting the decedent. In the days prior to the shooting, petitioner and the decedent were arguing. A witness described petitioner as agitated and irritated over the way he perceived that he was being treated by the decedent. Moreover, petitioner made statements to multiple witnesses on the night of the shooting that he intended to kill someone. Accordingly, we find that the jury reasonably could have determined that petitioner shot the decedent with malice, premeditation, and deliberation and find there is sufficient evidence to sustain petitioner's conviction.

In his third assignment of error, petitioner argues that the evidence presented at trial was insufficient to support a verdict of murder in the first or second degree as a matter of law.[3] Petitioner contends that there was sufficient evidence to require remand of the case with entry of an order finding petitioner guilty of the offense of voluntary manslaughter. We decline petitioner's invitation to remand. Our determinations set forth above with respect to the sufficiency of the evidence to sustain petitioner's conviction for murder in the first degree are dispositive of this issue. Accordingly, we find no merit to petitioner's argument.

For the foregoing reasons, we affirm petitioner's February 3, 2016, conviction.

Affirmed.

**ISSUED:** September 1, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

**DISSENTING:**

Justice Robin Jean Davis

---

[3] It is without dispute that petitioner was convicted of murder in the first degree, not murder in the second degree.